## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **A. J. DAVIES,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| | |
| **VERSUS** | **NO. 17-12575** |
| | |
| **JAMES LEBLANC, ET AL.,** | **SECTION: "E" (5)** |
|     **Defendants** | |

### ORDER AND REASONS

Before the Court is a motion to dismiss filed by Defendants Tracy Falgout, Stephanie Lamartiniere, Randy Lavespere, and Cynthia Park.[1] For the following reasons, the motion to dismiss for failure to state a claim is **DENIED** as to Counts 1, 2, and 3, and the Court's ruling on qualified immunity on those Counts is **DEFERRED**. The motion to dismiss for failure to state a claim is **GRANTED** as to Count 4.

### BACKGROUND

Plaintiff A.J. Davies currently is incarcerated at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana.[2] On April 28, 2017, Davies filed a complaint in federal court under 42 U.S.C. § 1983 alleging various individuals connected with LSP violated his constitutional right to appropriate medical care and his right to refuse medical treatment.[3] Over the next year and a half, Davies filed three amended complaints in a pro se capacity.[4] Davies then was appointed counsel and on November 27, 2019, with the assistance of counsel, filed what is designated as a Third Amended Complaint.[5] On December 27, 2019, also with the assistance of counsel, Davies filed what is designated as

---

[1] R. Doc. 65. Plaintiff filed an opposition. R. Doc. 69.
[2] R. Doc. 52, ¶ 12.
[3] R. Doc. 1.
[4] R. Doc. 4; R. Doc. 17; R. Doc. 21.
[5] R. Doc. 44.

a Fourth Amended Complaint.[6] Defendants Park, Falgout, Lavespere, and Lamartiniere ("the State Defendants"), all sued only in their individual capacities, seek to dismiss this Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for its failure to state a claim for relief and based on qualified immunity.[7]

## Factual Allegations[8]

By at least March 2016, Davies began experiencing pain in his genital area and observed an area of hardness on or around the head of his penis.[9] During an appointment that month at which he was seen by Nurse Park, Davies alerted Nurse Park to this pain and hardness in his genital area.[10] Without a meaningful examination, Nurse Park prescribed Davies two weeks' worth of antibiotics.[11] Davies took the antibiotics but saw no improvement.[12]

Two to three weeks after the March, 2016 appointment, Davies again saw Nurse Park who ignored his complaints and, without a meaningful examination, prescribed another course of pills.[13] Davies took these pills as instructed but his condition did not improve.[14] By April 2016, Davies began noticing blood in his urine.[15] On April 22, 2016, Davies saw Nurse Park a third time and reported to her he was not seeing any

---

[6] R. Doc. 52.

[7] R. Doc. 65.

[8] The following facts are stated as set forth in Davies' Fourth Amended Complaint. R. Doc. 52. Davies has also filed a Fifth Amended Complaint setting forth additional allegations regarding Defendants Silberstein and McCaslin. R. Doc. 86. Because the instant motion to dismiss is based on Davies' Fourth Amended Complaint, and because the allegations in the Fourth Amended Complaint are not supplemented or altered by the Fifth Amended Complaint, the Court will rely on the allegations of the Fourth Amended Complaint in deciding this motion.

[9] R. Doc. 52, ¶ 20.

[10] *Id.* ¶¶ 21–22.

[11] *Id.* ¶ 23.

[12] *Id.* ¶ 24.

[13] *Id.* ¶ 25.

[14] *Id.* ¶ 26.

[15] *Id.*

improvement.[16] Davies also expressed frustration that Nurse Park was not doing anything meaningful to investigate his condition.[17] Nurse Park again ignored Davies' complaints, did not perform a meaningful examination, and prescribed Davies an antibiotic ointment.[18] After using the ointment, Davies' condition continued to worsen, and he observed more hardness on the right side of his penis.[19]

On May 23, 2016, Davies completed a healthcare request form indicating he had been complaining of pain in his genital area for approximately three months but had not received any meaningful treatment.[20] In response, an Emergency Medical Technician (EMT) at LSP evaluated Davies on May 31, 2016.[21] The EMT determined Davies did not need to be seen immediately and could wait for his already scheduled appointment at the LSP clinic at which "they would see what's what."[22]

On June 1, 2016, Davies was on "call out" from the LSP Treatment Center.[23] Davies reported to the LSP Treatment Center but was not permitted to see a doctor.[24] Instead, he was told to submit blood for testing at the lab.[25] On June 2, 2016, Davies again sought treatment but was turned down for sick call because the officer in charge could not locate a sick call form.[26] After leaving sick call, a warden noticed Davies was in considerable pain.[27] Davies explained he had requested treatment but was told the sick call forms were

---

[16] *Id.* ¶ 27.
[17] *Id.*
[18] *Id.* ¶ 28.
[19] *Id.* ¶ 29.
[20] *Id.* ¶ 30.
[21] *Id.* ¶ 31.
[22] *Id.*
[23] *Id.* ¶ 32.
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 33.
[27] *Id.* ¶ 34.

missing.[28] The warden told Davies to return to sick call and put in an emergency request.[29] Davies returned and requested emergency care for the pain in his genital region.[30] An EMT reviewed Davies' emergency request and instructed him to sign the request form but took no further action.[31] After Davies signed the request form, no medical provider at LSP responded.[32]

On June 6, 2016, Davies filed an emergency grievance with LSP that described his lack of adequate medical treatment.[33] On June 21, 2016, he saw another EMT at LSP, who also failed take any action to treat Davies or obtain treatment for him in a timely manner.[34] In response to Davies' June 21, 2016, request for treatment, another medical provider, without examining Davies, prescribed him another course of antibiotics.[35]

On July 15, 2016, Davies' emergency grievance was denied.[36] On July 22, 2016, Davies appealed this denial, and his appeal also was denied.[37] On July 23, 2016, Davies again went to the LSP Treatment Center to request treatment and, during this visit, he was scheduled an appointment to see a urology doctor at LSP.[38] On July 25, 2016, Davies was seen by a medical provider at the LSU Urology Clinic at LSP.[39] This provider noted Davies had multiple lesions on his penis and that the lesions had been present for the past six months.[40] The provider did not give Davies a diagnosis, treatment, or treatment plan.[41]

---

[28] Id.
[29] Id.
[30] Id. ¶ 35.
[31] Id.
[32] Id.
[33] Id. ¶ 36.
[34] Id. ¶ 37.
[35] Id. ¶ 38.
[36] Id. ¶ 39.
[37] Id.
[38] Id. ¶ 40.
[39] Id. ¶ 41.
[40] Id.
[41] Id.

On August 14, 2016, Davies declared himself a medical emergency and sought immediate treatment.[42] A physician at LSP reviewed this request for treatment but did not evaluate Davies.[43] Davies was told to go to sick call as needed.[44] On September 2, 2016, "LSP personnel" told Davies he was being transported to University Medical Center in New Orleans (UMC) for a biopsy of his genitals.[45] He was transported to UMC that same day.[46] At all times, the State Defendants knew Davies could potentially undergo a penectomy (penis amputation) at UMC, but they never told him.[47]

At UMC, Davies was told he would undergo a biopsy and that a tissue sample would be taken.[48] No medical provider discussed a potential penectomy with him.[49] On September 3, 2016, after undergoing sedation, Davies awoke to discover approximately 75% of his penis had been amputated and a catheter had been installed at the base of his penis.[50] Davies never received a formal diagnosis for his medical issues.[51]

On September 5, 2016, Davies saw a medical provider at LSP.[52] The provider informed him "they had run into cancer" and that is why his penis had been amputated.[53] This was the first time Davies was told he had cancer.[54] On November 14, 2016, Davies filed a formal grievance based on the amputation of his penis without his consent.[55] Davies' request for relief was denied, as was his appeal of the denial.[56]

---

[42] *Id.* ¶ 42.
[43] *Id.*
[44] *Id.* ¶ 43.
[45] *Id.* ¶ 44.
[46] *Id.*
[47] *Id.* ¶ 73.
[48] *Id.* ¶ 45.
[49] *Id.*
[50] *Id.* ¶ 46.
[51] *Id.* ¶ 46.
[52] *Id.* ¶ 48.
[53] *Id.*
[54] *Id.*
[55] *Id.* ¶ 49.
[56] *Id.*

Defendant Tracy Falgout, Deputy Warden of Operations at LSP, was responsible for protecting the constitutional rights of all persons held in LSP's custody.[57] Defendant Stephanie Lamartiniere, an Assistant Warden for Health Services at LSP, exercised operational control over the Angola Treatment Center by making staffing, budget, and administrative decisions.[58] Further, she was charged with creating, enforcing, and implementing policies to ensure the delivery of adequate health care to inmates.[59] Defendant Randy Lavespere, the Medical Director of the Office of Health Services at LSP, exercised operational control over the Angola Treatment Center hospital by overseeing the delivery of medical treatment to inmates.[60] Nurse Park was a medical provider responsible for the delivery of medical care to inmates at LSP.[61]

## Causes of Action

Davies brings four § 1983 claims against the State Defendants based on their alleged violations of his Eighth Amendment and Fourteenth Amendment rights:[62]

Count 1:   Davies alleges Defendants Falgout, Lamartiniere, and Lavespere violated the Eighth Amendment by establishing and implementing a healthcare system at LSP in which patients are denied access to adequate medical care.[63]

Count 2:   Davies alleges Falgout, Lamartiniere, and Lavespere violated the Eighth Amendment by failing to supervise their subordinates to

---

[57] *Id.* ¶ 13.
[58] *Id.* ¶ 14.
[59] *Id.*
[60] *Id.* ¶ 15.
[61] *Id.* ¶ 16.
[62] 42 U.S.C. § 1983 authorizes suits against a "person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." As a threshold matter, to state a claim under 42 U.S.C. § 1983, a plaintiff must show the alleged violation of the Constitution or of federal law was committed by someone acting under color of state law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005). State Defendants do not dispute they were acting under color of state law when the acts alleged by Davies took place. Instead, State Defendants assert Davies has not sufficiently stated any constitutional violations occurred and assert they are entitled to qualified immunity.
[63] R. Doc. 52, ¶ 56.

ensure patients at LSP received appropriate care for serious medical needs.[64]

Count 3:     Davies alleges all four of the State Defendants violated the Eighth Amendment by acting with deliberate indifference to Davies' serious medical needs.[65]

Count 4:     Davies alleges all four of the State Defendants violated his Fourteenth Amendment right to refuse medical treatment.[66]

The State Defendants bring the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[67] They assert Davies has failed to state a claim on which relief may be granted against them. In addition, they raise the defense of qualified immunity on all claims.

The Court begins its analysis with Count 3—that the State Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment when they acted with deliberate indifference to Davies' serious medical needs. The Court then will consider Counts 1 and 2 against Defendants Lamartiniere, Falgout, and Lavespere (collectively referred to as "the Supervisory Defendants") for failing to establish adequate policies and practices at LSP and for failure to supervise their subordinates. Finally, the Court will consider Count 4—that the State Defendants violated Davies' right to refuse medical treatment.[68]

---

[64] *Id.* ¶ 60.

[65] *Id.* ¶ 66.

[66] *Id.* ¶ 73. Davies also alleges Defendants Silberstein and McCaslin violated his right to refuse medical treatment. The claim against Silberstein was the subject of a separate motion to dismiss. *See* R. Doc. 73; R. Doc. 85.

[67] R. Doc. 65.

[68] Davies' fifth cause of action is not against State Defendants and will not be addressed in this Order.

## **LEGAL STANDARD**

### **Rule 12(b)(6) Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[69] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[70] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[71] However, the court does not accept as true legal conclusions or mere conclusory statements,[72] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[73] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[74]

"Factual allegations must be enough to raise a right to relief above the speculative level."[75] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[76]

---

[69] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[70] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[71] *Id.*
[72] *Id.*
[73] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[74] *Iqbal*, 556 U.S. at 678 (citations omitted).
[75] *Twombly*, 550 U.S. at 555.
[76] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## Qualified Immunity Standard

The qualified immunity defense serves to shield government officials sued in their individual capacities and performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[77] The Fifth Circuit has explained that "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[78] It is plaintiff's burden to overcome a defendant's defense of qualified immunity.[79] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[80]

To overcome qualified immunity, the allegations in the complaint must show (1) the defendant's conduct violated the plaintiff's constitutional rights and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[81] The second prong involves two inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."[82]

For a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"[83] "[T]he contours of the right must

---

[77] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).
[78] *Id.* (citations omitted).
[79] *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).
[80] *Backe*, 691 F.3d at 648.
[81] *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).
[82] *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).
[83] *Id.*

be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[84] "Officials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be put on notice that their conduct is unlawful.'"[85] "The court's focus, for purposes of the 'clearly established' analysis should be on 'fair warning': qualified immunity is unavailable 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[86] The "objective unreasonableness inquiry" calls for a determination of what a reasonable officer could have believed regarding the legality of his action, under the specific circumstances alleged.[87] The doctrine of qualified immunity will not protect "the plainly incompetent or those who knowingly violate the law."[88]

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[89] Consequently, the Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."[90] "*After* the district court finds the plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed

---

[84] *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Anderson*, 483 U.S. at 640).

[85] *Id.* at 393 (quoting *Kinney*, 367 F.3d at 350).

[86] *Id.* at 392 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

[87] *See Strickland v. City of Crenshaw, Miss.*, 114 F.Supp.3d 400, 413 (N.D. Miss. 2015).

[88] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

[89] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).

[90] *Id.*

to rule on the immunity claim.'"[91] A court may choose this "defer-and-discover approach 'when the defendant's immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue."[92]   The Fifth Circuit has further explained "[a]n order that simultaneously withholds ruling on a qualified immunity defense while failing to constrain discovery to develop claimed immunity is by definition not narrowly tailored."[93]

## **LAW AND ANALYSIS**

### I.    **Count 3**

The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, proscribes the government's implementation of cruel and unusual punishment.[94] Prison officials inflict cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs.[95] "Not all inadequate medical treatment rises to the level of an Eighth Amendment violation; '[i]t is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment'" that amounts to cruel and unusual punishment.[96] To state a deliberate indifference claim, a plaintiff must allege "[1] 'objectively that he was exposed to a substantial risk of serious harm,' and [2] that 'jail officials acted or failed to act with deliberate indifference to that risk,' which requires actual knowledge and deliberate disregard."[97]

---

[91] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)).
[92] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe,* 691 F.3d at 648).
[93] *Backe*, 691 F.3d at 649.
[94] *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).
[95] *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).
[96] *Id.*
[97] *Id.*

The first element of Davies' deliberate indifference claim is not in dispute. Davies' prolonged, severe pain, and his ultimate cancer diagnosis that led to the amputation of his penis, are quite clearly "serious medical needs" that objectively exposed him to a substantial risk of serious harm if left untreated.

The second element of Davies' claim, however, is in dispute. For a prison official to act with deliberate indifference "the official [must] know[] of and disregard[] an excessive risk to inmate health or safety."[98] For an official to "know of" a risk, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[99] To show officials "disregarded" a known, serious medical need, "the inmate [must] allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[100]

The Court will first consider whether Davies has stated a claim for deliberate indifference against Nurse Park and then consider whether he has stated a claim against the Supervisory Defendants. After considering whether Davies' has stated deliberate indifference claims, the Court will consider whether Davies has stated facts that, if true, would overcome the State Defendants' defense of qualified immunity.

### A.   Davies has alleged Nurse Park acted with deliberate indifference to his serious medical needs.

In March 2016, during an appointment with Nurse Park, Davies alerted Nurse Park to the pain and hardness in his genital area, which he also described as a growth on his

---

[98] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[99] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[100] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009); *see also Bohannan v. Doe*, No. 12-10231, 2013 WL 2631197, at *6 (5th Cir. June 12, 2013) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

penis.[101] Without a meaningful examination, Nurse Park prescribed Davies two weeks' worth of antibiotics.[102] Davies took the antibiotics but saw no improvement.[103] Two to three weeks later, Davies again saw Nurse Park.[104] He informed her his pain had worsened and he had blood in his urine.[105] Nurse Park again ignored his complaints and, without a meaningful examination, prescribed another course of pills.[106] Davies took these pills as instructed, but his condition did not improve.[107] On April 22, 2016, Davies saw Nurse Park a third time and reported to her he was not seeing any improvement and his pain continued to be severe.[108] Davies also expressed frustration that Nurse Park was not doing anything meaningful to investigate his condition.[109] Nurse Park again ignored Davies' complaints, did not perform a meaningful examination, and prescribed Davies an antibiotic ointment.[110] After using the ointment, Davies' condition continued to worsen, and he observed more hardness on the right side of his penis.[111] In each of those visits, over a two-month period, Nurse Park failed to meaningfully examine Davies and provided him wholly cursory and inadequate treatment.[112]

Because Nurse Park directly provided medical care to Davies on three occasions regarding the pain in his genital area, Nurse Park does not dispute she had actual knowledge of Davies' serious medical needs. Instead, Nurse Park argues only that she did not deliberately disregard those needs. Nurse Park asserts the conduct Davies describes

---

[101] R. Doc. 52, ¶¶ 5, 21–22.
[102] *Id.* ¶ 23.
[103] *Id.* ¶ 24.
[104] *Id.* ¶ 25.
[105] *Id.*
[106] *Id.*
[107] *Id.* ¶ 26.
[108] *Id.* ¶ 27.
[109] *Id.*
[110] *Id.* ¶ 28.
[111] *Id.* ¶ 29.
[112] *Id.* ¶ 23.

does not amount to deliberate disregard because "unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[113] According to Nurse Park, "An incorrect diagnosis by prison medical personnel [similarly] does not suffice to state a claim for deliberate indifference."[114] Further, Nurse Park argues, "If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful or because pain or other symptoms persist despite the treatment."[115]

Although Nurse Park is correct that "[a]n incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference,"[116] Davies' claim of deliberate indifference is based not on an incorrect diagnosis or an unsuccessful course of treatment. Instead, it is based on Nurse Park's cursory and inadequate treatment of Davies' medical condition by failing to meaningfully examine him, failing to provide him access to appropriate diagnostic tests,[117] failing to provide him adequate treatment, and failing to refer him to an appropriate specialist or to another facility as was her duty as the gatekeeper to Davies' further medical care.

The Fifth Circuit has made clear "[t]he mere provision of medical treatment does not per se preclude a finding of deliberate indifference.[118] Instead, "deliberate indifference may be found if the treatment provided evidences (i) the conscious disregard of (ii) a serious medical need."[119] For example, in *Rodrigue v. Morehouse Detention Center*, the

---

[113] R. Doc. 65-1, at 7 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[114] *Id.* (citing *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).
[115] *Id.* (citing *Gobert*, 463 F.3d at 346).
[116] *Id.* (citing *Domino*, 239 F.3d at 756).
[117] Davies did eventually receive a biopsy in September 2016. R. Doc. 52, ¶ 45–48.
[118] *Blank v. Eavenson*, 530 F. App'x 364, 368 (5th Cir. 2013).
[119] *Id.*

District Court for the Western District of Louisiana held, and was affirmed by the Fifth Circuit, that a nurse's failure to refer an inmate to the prison's medical doctor despite his severe medical needs constituted deliberate indifference.[120] The court explained:

> [I]t is important to specify that the question is not whether Nurse Grayson is liable for failing to recognize that Rodrigue had acute appendicitis. As previously discussed, a LPN is not authorized to make a diagnosis. However, a LPN, and especially a LPN who is the sole gatekeeper for access to a physician, must be able to know when there is a risk of a serious condition that requires additional care. LPN Grayson knew that Rodrigue's complaints showed that he was at risk of serious harm. She simply decided not to respond to that risk. This is not a case where an inmate saw a physician and that physician made an unfortunately incorrect medical decision. . . . In this case, despite persistent complaints of extreme abdominal pain and bilious vomiting for over a week, a prisoner was simply denied access to a medical professional competent to diagnose and treat his condition. The Court is convinced that this conduct rose to the level of a wanton disregard for Rodrigue's serious medical needs. . . . When a gatekeeper to emergency care, like LPN Grayson, knowingly disregards a prisoner's complaints, she acts with deliberate indifference to that prison's medical needs.[121]

The Eleventh Circuit reached a similar conclusion in *Mandel v. Doe*.[122] In that case, the inmate plaintiff broke his hip while working on a prison crew.[123] Despite the inmate's repeated complaints of extreme discomfort, physician's assistants continually misdiagnosed him and prescribed him muscle relaxants and bed rest.[124] The Eleventh Circuit upheld the district court's finding that the physician's assistants' actions and inactions constituted deliberate indifference to the inmate's serious medical need,

---

[120] No. CIV.A. 09-985, 2012 WL 4483438, at *6 (W.D. La. Sept. 28, 2012), *aff'd sub nom. Rodrigue v. Grayson*, 557 F. App'x 341 (5th Cir. 2014).

[121] *Id.*

[122] 888 F.2d 783, 785 (11th Cir. 1989). The court explained that the inmate's injury took place on July 1, 1982, and that his broken hip went undiagnosed until after his release from prison in September 1982. *Id.* at 785–86.

[123] *Id.* at 785.

[124] *Id.*

explaining that "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."[125]

Likewise, in *Spikes v. McVea*, an inmate plaintiff suffered from a broken hip and alleged that, despite repeated attempts to obtain care, prison staff failed to adequately treat him.[126] The Court found the inmate plaintiff stated a viable claim for deliberate indifference against the nurse defendants based on their improper diagnosis, "thereby preventing [him] from being evaluated by a medical professional capable of properly diagnosing his condition."[127] The Court explained that, while the nurse defendants provided the plaintiff with some treatment such as muscle rub and ibuprofen, this was not sufficient to defeat a claim of deliberate indifference because "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."[128]

Like the plaintiffs in *Rodrigue*, *Mandel*, and *Spikes*, Davies clearly has alleged Nurse Park consciously disregarded his obvious need for medical treatment by failing to meaningfully examine him, failing to provide him adequate treatment, and failing to refer him to a specialist as she was required to do as the gatekeeper to Davies' medical care. In sum, Davies alleges Nurse Park, when faced with Davies' serious medical needs, "refused to treat him [and] ignored his complaints," which is a textbook Eighth Amendment violation.[129] Nurse Park's contention that she cannot be held liable under § 1983 because she did *something* in response to Davies' complaints is incorrect. Again, "medical care

---

[125] *Id.* at 789 (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); *West v. Keve*, 571 F.2d 158, 162 (3rd Cir. 1978)).
[126] No. CV 17-8164, 2018 WL 2095732, at *1 (E.D. La. May 7, 2018).
[127] *Id.* at *6.
[128] *Id.* at *7 (quoting *Farmer*, 511 U.S. at 789).
[129] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

which is so cursory as to amount to no treatment at all may amount to deliberate indifference."[130] As a result, the Court finds Davies has pleaded facts that, if true, demonstrate Nurse Park's "wanton disregard for [his] serious medical needs" and her violation of Davies' rights under the Eighth Amendment.[131]

### B. Davies has alleged the Supervisory Defendants acted with deliberate indifference to his serious medical needs.

Davies alleges the Supervisory Defendants were deliberately indifferent to his serious medical needs because, as supervisors, they were subjectively aware that Davies' was exposed to a substantial risk of serious harm and they acted or failed to act with deliberate indifference to that risk. As explained before, the first element of Davies' deliberate indifference claim is not in dispute because Davies' prolonged, severe pain, and his ultimate cancer diagnosis that led to the amputation of his penis, are quite clearly "serious medical needs" that objectively exposed him to a substantial risk of serious harm if left untreated.

What is in dispute is whether the Supervisory Defendants were deliberately indifferent to Davies' needs or, in other words, whether they (1) knew of Davies' needs and (2) disregarded them. Davies alleges the Supervisory Defendants deliberately disregarded his serious medical needs by failing to respond to his complaints and failing to provide him adequate medical treatment.[132] Davies further alleges their failure to respond to his complaints deprived him of reasonable and adequate medical care because he was not timely seen and evaluated, was not provided access to appropriate diagnostic testing, was not seen by a specialist, and his condition was not monitored.[133]

---

[130] *Mandel*, 888 F.2d at 789.
[131] *Brewster*, 587 F.3d at 770.
[132] R. Doc. 52, ¶¶ 67–68.
[133] *Id.* ¶ 67.

Davies alleges the Supervisory Defendants were subjectively aware of his serious medical needs through Davies' personal interactions with them and the formal and informal complaints and appeals lodged by him. Davies (1) completed a healthcare request form indicating he had been complaining of pain in his genital area for approximately three months;[134] (2) filed an emergency grievance with LSP that described his lack of adequate medical treatment, which was denied initially and denied on appeal;[135] (3) attended sick call numerous times;[136] and (4) declared himself a medical emergency.[137]

The Supervisory Defendants assert Davies has not stated an Eighth Amendment claim against them because Davies' allegation that they were subjectively aware of Davies' serious medical problems, via their interactions with Davies and Davies' complaints, is conclusory and devoid of supporting factual allegations.[138] The Supervisory Defendants further argue the filing of a formal complaint was insufficient to place them on notice.[139] The Supervisory Defendants do not focus on whether they disregarded Davies' medical needs. Instead, they simply argue they were never aware of Davies' medical needs in the first place.

"Supervisory officers, like the defendant officials, cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."[140] "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise

---

[134] *Id.* ¶ 30.
[135] *Id.* ¶¶ 36, 39.
[136] *Id.* ¶¶ 33, 34.
[137] *Id.* ¶ 42.
[138] R. Doc. 65-1, at 12.
[139] *Id.*
[140] *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citing *See Monell v. Department of Social Services,* 436 U.S. 658, 691–95; *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984) (en banc)).

to individual liability under § 1983."[141] A claim arising under § 1983 "requires a degree of causation as an element of individual liability," but "it does not specifically require 'personal participation.'"[142] Any prison official, including a prison official with a supervisory role, violates an inmate's Eighth Amendment rights by "refus[ing] to treat him, ignor[ing] his complaints, intentionally treat[ing] him incorrectly, or engag[ing] in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs."[143] Such action shows the official *was* "personally involved in [the] constitutional violation" and thus may be held liable under § 1983.[144] Other circuits have also made clear supervisors are liable under § 1983 if they know about a complaint regarding a constitutional deprivation and "approve[ the deprivation], condone[] it or turn[] a blind eye."[145]

Regarding the Supervisory Defendants knowledge of Davies' serious medical needs, the Court finds the Seventh Circuit's decision in *Reed v. McBride* is instructive.[146] In that case, an inmate plaintiff sent three letters of complaint to supervisory prison officials and filed internal prison grievances about alleged deprivations of food and medicine.[147] The Seventh Circuit held "[t]hese letters put the defendants on notice of [the plaintiff's] complaints," and "[c]learly, this satisfies the requirement that a defendant be

---

[141] *Id.* (*citing Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 534 (5th Cir. 1997)).

[142] *Doe v. Rains Cty. Indep. Sch. Dist.,* 66 F.3d 1402, 1412 (5th Cir. 1995).

[143] *Houston v. Zeller,* 91 F. App'x 956, 957 (5th Cir. 2004) (noting the plaintiff would have stated a deliberate indifference claim against the supervisory defendants in that case had he alleged the supervisors "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs").

[144] *Id.*

[145] *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir. 1996).

[146] *Reed v. McBride,* 178 F.3d 849 (7th Cir. 1999).

[147] *Id.* at 854.

aware of facts 'from which the inference could be drawn that a substantial risk of serious harm exists' to the defendant."[148]

In this case, Davies has sufficiently alleged the Supervisory Defendants were subjectively aware, through specifically identified formal and informal complaints and an appeal, of his serious medical condition but nevertheless disregarded those needs by "turn[ing] a blind eye" and "refus[ing] to treat him [and] ignor[ing] his complaints."[149] On May 23, 2016, Davies completed a healthcare request form indicating he had been complaining of pain in his genital area for approximately three months but had not received any meaningful treatment.[150] On June 2, 2016, Davies sought treatment at "sick call" numerous times but was turned down because the "sick call" forms were missing.[151] That same day, Davies also requested, but was denied, emergency treatment.[152] On June 6, 2016, Davies filed an emergency grievance with LSP that described his lack of adequate medical treatment.[153] On July 15, 2016, this emergency grievance was denied.[154] On July 22, 2016, Davies appealed this denial, and his appeal was also denied.[155] On July 23, 2016, Davies again went to the LSP Treatment Center to request treatment.[156] After still not receiving adequate care, on August 14, 2016, Davies declared himself a medical emergency and sought immediate treatment.[157] Despite all of these complaints and an

---

[148] *Id*. Further, the Court notes that, at the motion to dismiss stage, "[i]dentification of a responsible party or parties within a complex, overlapping chain of command is often a difficult task . . . [and plaintiffs] should not be penalized at [this] stage for failing to identify precisely which defendant or defendants dropped the ball." *Hernandez v. Horn*, No. 09-163, 2010 WL 1525513, at *10 (S.D. Tex. Apr. 15, 2010) (citing *Shaw ex rel. Strain v. Strackhouse*, 920 F.2d 1135, 1149–50 (3d Cir. 1990)).
[149] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).
[150] R. Doc. 52, ¶ 30.
[151] *Id*. ¶¶ 33–34.
[152] *Id*. ¶ 35.
[153] *Id*. ¶ 36.
[154] *Id*. ¶ 39.
[155] *Id*.
[156] *Id*. ¶ 40.
[157] *Id*. ¶ 42.

appeal, however, Davies alleges he never received adequate medical care and the Supervisory Defendants never responded, even though they were subjectively aware of Davies' serious medical needs.[158]

Based on these allegations, Davies has sufficiently alleged the Supervisory Defendants were subjectively aware of his serious medical needs but "ignored his complaints" and turned a blind eye to them.[159] For that reason, Davies has alleged with sufficient particularity that the Supervisory Defendants were personally involved in the violation of Davies' Eighth Amendment right to adequate medical care. The Supervisory Defendants have not argued they were not deliberately indifferent because they responded to Davies' complaints, and, as a result, the Court will not address that requirement. Accordingly, the Court finds Davies has pleaded facts that, if true, demonstrate the Supervisory Defendant's "wanton disregard for [his] serious medical needs" and their violation of Davies' rights under the Eighth Amendment.[160]

### C. Davies' complaint states facts that, if true, overcome the State Defendants' defense of qualified immunity on Count 3.

To overcome qualified immunity, a plaintiff must establish (1) the allegations in the complaint show the defendant's conduct violated the plaintiff's constitutional rights and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[161] The second prong involves two inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively

---

[158] *Id.* ¶ 67.
[159] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).
[160] *Brewster*, 587 F.3d at 770.
[161] *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).

unreasonable in the light of that then clearly established law."[162] The Court already has found Davies has alleged the State Defendants violated his Eighth Amendment right to adequate medical care. Accordingly, the Court will now address whether that right was clearly established at the time and, if so, whether the State Defendants' conduct was objectively unreasonable in light of that right.

First, there is no dispute the Eighth Amendment's protection of a prisoner's right to adequate medical care is clearly established, and prison officials violate that right when they act with deliberate indifference to an inmate's serious medical needs.[163] The Fifth Circuit has made clear that prison officials are deliberately indifferent to an inmate's serious medical needs and violate the Eighth Amendment when they "'refuse[] to treat [an inmate], ignore[] his complaints, intentionally treat[] him incorrectly, or engage[] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[164]

Second, the Court finds Davies has sufficiently alleged the State Defendants' actions in violation of this clearly established right were objectively unreasonable. Regarding Nurse Park, it was objectively unreasonable for her to ignore Davies' repeated complaints—over two months and three separate visits—about worsening pain and hardness in his genital area, to refuse to examine him, and to refuse to provide anything more than uninformed, cursory treatment. Any reasonable prison official would know the Eighth Amendment requires her to examine patients with serious medical needs and

---

[162] *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

[163] *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)); *Rodrigue v. Morehouse Det. Ctr.*, No. CIV.A. 09-985, 2012 WL 4483438, at *9 (W.D. La. Sept. 28, 2012), *aff'd sub nom. Rodrigue v. Grayson*, 557 F. App'x 341 (5th Cir. 2014) ("There is no dispute that the right to be free from cruel and unusual punishment is a clearly established right." (citing *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006)).

[164] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

provide or procure reasonable treatment for those needs. As a result, if true, Davies'
allegations are sufficient to defeat Nurse Park's claim of qualified immunity as her actions
were objectively unreasonable in light of the violation of Davies' clearly established Eighth
Amendment rights.

The Court likewise finds the Supervisory Defendants actions were objectively
unreasonable. In *Rodrigue v. Morehouse Detention Center*, the District Court for the
Western District of Louisiana came to a similar conclusion in a similar case when it stated,

> "The Court finds that an objectively reasonable prison official designated to
> receive inmate complaints would have known that they were violating a
> prisoner's right to be free from cruel and unusual punishment when they
> ignored a complaint which stated that the inmate was extremely sick despite
> the Nurse's attempt to treat the symptoms and which requested help in
> obtaining additional medical care. Therefore, Lt. Fife [the supervisor] is not
> entitled to qualified immunity."[165]

If true, Davies' allegations are sufficient to defeat qualified immunity as the
Supervisory Defendants in this case were objectively unreasonable in ignoring Davies'
numerous complaints regarding his serious medical problems that had only worsened
over the time cursory treatment was provided by prison staff. Their actions, as alleged,
"evince a wanton disregard for a[] serious medical need[]."[166]

The Court has found Davies' allegations, if true, overcome the State Defendants'
defense of qualified immunity. The Court further finds the State Defendants' "'immunity
claim turns at least partially on a factual question' that must be answered before a ruling
can issue."[167]   As a result, limited discovery is needed for the Court to rule. Because the
Court needs further clarification of various factual questions before ruling on the State

---

[165] *Rodrigue*, 2012 WL 4483438, at *12.
[166] *Brewster*, 587 F.3d at 770.
[167] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe,* 691 F.3d at 648).

Defendants' claim of qualified immunity, the Court will order limited discovery in this matter as set forth below.[168]

## II.   Count 1

Davies alleges the Supervisory Defendants "failed to create and/or enforce policies at LSP to ensure that Mr. Davies would receive adequate medical treatment,"[169] and that this failure was a violation of the Eighth Amendment.[170] More particularly, Davies alleges the Supervisory Defendants established a system that failed to (1) ensure patients with serious medical complaints were timely referred to an appropriate physician; (2) ensure adequate access to outside hospital and specialist care; and (3) ensure adequate staffing and supervision at LSP for the delivery of medical care to inmates.[171]

In their motion to dismiss, the Supervisory Defendants argue this claim should be dismissed because Davies does not allege any facts showing they were personally involved in violating Davies' rights, and they cannot be held liable merely based on the supervisory positions because "[i]t is firmly established that individual liability under § 1983 may not

---

[168] *Id.* at 674 (5th Cir. 2015) (approving a district court's order for "limited to the personal knowledge and personal conduct of each Defendant as it relates to Albert Hinojosa and the circumstances leading to his death").

[169] R. Doc. 52, ¶¶ 13–15.

[170] *Id.* ¶ 56.

[171] *Id.* Although Davies' claims are based on the Supervisory Defendants' failure to establish and maintain constitutionally required policies, the Court notes Davies also alleges the Supervisory Defendants implemented unconstitutional policies at LSP. To make such a claim, Davies would have to show, among other requirements, that some policy at LSP "was the moving force behind, or actual cause of, the constitutional injury. . . . This requires 'direct causation' between the policy and the alleged violation. This requires 'more than a mere "but for" coupling between cause and effect.'" *Boyter v. Brazos Cty.*, No. CIV.A. H-09-4132, 2011 WL 1157455, at *13 (S.D. Tex. Mar. 28, 2011) (internal citations omitted). Davies has complained of only one policy that actually was adopted at LSP—a policy by which inmate requests for treatment initially were evaluated by EMTs rather than a physician, physician assistant, or nurse. R. Doc. 52, ¶ 52. Although Davies has pointed to the adoption of this policy as a constitutional violation, he alleges the cause of his injury was LSP's failure to implement a policy by which the EMTs timely referred inmates to a medical provider with more training. There is no "direct causation" between Davies' injury and his evaluation by EMTs. There is only direct causation between his injury and the failure of the EMTs to refer him to a physician. The Court finds Davies has not stated a claim against the Supervisory Defendants for affirmatively enacting a policy that prisoners are seen first by an EMT.

be predicated on the vicarious liability doctrine of *respondeat superior*."[172] The Supervisory Defendants are correct that a supervisory official may not be held liable under § 1983 for the actions of subordinates under a theory of *respondeat superior*. Davies does not attempt to hold the Supervisory Defendants liable under the theory of *respondeat superior*. Instead, as explained below, Davies alleges the Supervisory Defendants themselves violated Davies' constitutional rights by failing to establish and maintain policies at LSP to ensure inmates received adequate medical care.

### A. Davies has stated an actionable Eighth Amendment claim against the Supervisory Defendants based on their failure to implement constitutionally adequate policies at LSP.

A policymaker may be subject to § 1983 liability for the failure to promulgate constitutionally adequate policies and procedures.[173] The Fifth Circuit detailed the circumstances under which a policymaker may be subject to such § 1983 liability in *Rhyne v. Henderson County*.[174] The court explained a failure to adopt a policy must have been "'deliberately indifferent,'" and a policy is deliberately indifferent "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights"—in this case, the right to reasonably adequate medical care. [175] Accordingly, to state a claim against a defendant based on his or her failure to adopt certain policies, a plaintiff must show (1) the defendant is a policymaker, (2) the defendant failed to adopt certain policies, and (3) the obvious likely consequences of that failure to adopt certain policies would be the deprivation of constitutional rights.[176]

---

[172] R. Doc. 65-1, at 9 (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).
[173] *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992); *see Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1412 (5th Cir. 1995).
[174] *Rhyne*, 973 F.2d at 392.
[175] *Id.* (internal citations omitted) (citing *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989); *Manarite v. City of Springfield*, 957 F.2d 953, 959 (1st Cir. 1992)).
[176] *Id.*

In *Martone v. Livingston*, the District Court for the Southern District of Texas dealt with allegations, similar to those of Davies, that prison officials had failed to adopt policies to ensure certain inmates' Eighth Amendment rights were upheld.[177] In that case, the plaintiff alleged supervisory officials knew of extreme heat conditions in the prison and the danger those conditions posed to inmates.[178] Regarding one particular official, the plaintiff alleged that, despite the official's knowledge of the heat and the danger it posed to inmates, the official did "not institute[] any practice or policy concerning safely housing inmates known to be especially vulnerable to the heat."[179] As a result, the Court found the official's "failure to adopt a policy to protect heat-sensitive inmates sufficiently pleads deliberate indifference for supervisory liability."[180]

In this case, Davies has alleged facts sufficient to state a claim against the Supervisory Defendants for their failure to adopt policies at LSP to ensure inmates receive reasonably adequate medical care. First, Davies clearly alleges the Supervisory Defendants are "policymakers" based on their positions at LSP.[181] Second, Davies just as clearly alleges the Supervisory Defendants "failed to create and/or enforce policies at LSP to ensure that Mr. Davies would receive adequate medical treatment."[182]  In support of this allegation, Davies offers as an example his lack of medical care or referral to a specialist even though he filed several complaints and an appeal and saw several medical providers, such as Nurse Park and the EMTs, at LSP.[183] Davies further points to his cancer going undiagnosed for a long period of time because he was not initially seen by, or timely

---

[177] No. 4:13-CV-3369, 2014 WL 3534696, at *11 (S.D. Tex. July 16, 2014).
[178] *Id.*
[179] *Id.*
[180] *Id.*
[181] R. Doc. 52, ¶¶ 13–15.
[182] *Id.* ¶¶ 13–15.
[183] *Id.* ¶ 56.

referred to, a physician, which delay ultimately led to a penectomy that may have been avoided had LSP put adequate policies in place.[184]

Third, Davies alleges the obvious likely consequence of the Supervisory Defendants' failure to adopt policies ensuring prisoners at LSP receive reasonably adequate medical care was the violation of prisoners' constitutional rights to such care. In support, Davies offers as an example the inadequate medical care he received, which he alleges directly resulted from the Supervisory Defendants' failure to adopt and implement necessary policies at LSP.[185] Davies also points to the Supervisory Defendants' subjective awareness, through specifically identified formal and informal complaints and appeals, of the inadequate care Davies was receiving at LSP as a result of their lack of policies and procedures.[186]

As a result, the Court finds Davies has sufficiently alleged the Supervisory Defendants failed to implement policies at LSP to ensure prisoners received appropriate medical care, and this failure, if true, amounted to deliberate indifference because "it is obvious that the likely consequences of not adopting a policy" to ensure prisoners receive adequate medical care will be the deprivation of prisoners' constitutional rights to such care.[187] Accepting Davies' allegations as true, the Court finds, in line with the court in *Martone*, Davies has stated an Eighth Amendment claim against the Supervisory Defendants for failing to establish and maintain adequate policies at LSP to ensure prisoners receive appropriate medical care.

---

[184] *Id.* ¶ 57.
[185] *Id.* ¶¶ 13–15 ("These failures contributed directly to Mr. Davies' injuries.")
[186] For example, on June 6, 2016, Davies filed an emergency grievance with LSP that described his lack of adequate medical treatment, but he received no responsive care. *Id.* ¶ 36.
[187] *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992).

**B.     Davies alleges facts that, if true, overcome the Supervisory Defendants' defense of qualified immunity on Count 1.**

Once more, to overcome qualified immunity, a plaintiff must establish (1) the allegations in the complaint show the defendant's conduct violated the plaintiff's constitutional rights and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[188] The Court already has found Davies has alleged the Supervisory Defendants violated his Eighth Amendment right to adequate medical care by not adopting policies to ensure prisoner's receive adequate medical care. Accordingly, the Court will now address whether that right was clearly established at the time and, if so, whether the Supervisory Defendants' conduct was objectively unreasonable in light of that right.

Davies allegations, if true, are sufficient to overcome the Supervisory Defendants' qualified immunity defense. First, it is clearly established that the Eighth Amendment guarantees a prisoner's right to adequate medical care and a "municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability" if "the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[189]

Second, the Supervisory Defendants failure to adopt policies at LSP was objectively unreasonable in light of this clearly established law because it would be clear, to any reasonable prison official, the "likely consequence" of having *no* policies to ensure prisoners with serious medical conditions are timely referred to an appropriate physician or outside facility would be many prisoners being denied their right to appropriate medical care guaranteed by the Eighth Amendment. In *Martone*, the court similarly

---

[188] *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).
[189] *Rhyne*, 973 F.2d at 392.

found the prison official's failure to "institute[] any practice or policy concerning safely housing inmates known to be especially vulnerable to the heat" not only violated the Eighth Amendment but also was "objectively unreasonable in light of this clearly established law," and the official accordingly was not entitled to qualified immunity.[190]

The Court has found Davies' allegations, if true, overcome the Supervisory Defendants' defense of qualified immunity. The Court further finds the Supervisory Defendants' "'immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue."[191]  As a result, limited discovery is needed for the Court to rule. Because the Court needs further clarification of various factual questions before ruling on the Supervisory Defendants' claim of qualified immunity, the Court will order limited discovery in this matter as set forth below.[192]

## III.    Count 2

Davies alleges Falgout, as Deputy Warden of Operations at LSP; Lamartiniere, as Assistant Warden for Health Services; and Lavespere, as Medical Director, were obligated under federal and state law to supervise personnel under their direction to ensure they (1) made timely referrals to medical professionals qualified to diagnose medical conditions, including specialists, where appropriate; (2) provided reasonable monitoring of patients' conditions; and (3) prescribed appropriate courses of treatment based on sound medical judgment.[193] According to Davies Fourth Amended Complaint, the Supervisory Defendants failed to fulfil these obligations, as evidenced by the inadequate

---

[190] No. 4:13-CV-3369, 2014 WL 3534696, at *12 (S.D. Tex. July 16, 2014).
[191] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe,* 691 F.3d at 648).
[192] *Id.* at 674 (5th Cir. 2015) (approving a district court's order for "limited to the personal knowledge and personal conduct of each Defendant as it relates to Albert Hinojosa and the circumstances leading to his death").
[193] R. Doc. 52, ¶¶ 61–62.

care Davies himself received.[194] In their motion to dismiss, the Supervisory Defendants argue they cannot be held liable under a *respondeat superior* theory.[195] As with the previous claim, though, Davies does not allege the Supervisory Defendants are liable based on a theory of *respondeat superior*. Instead, Davies alleges they themselves violated the Eighth Amendment by failing to supervise their subordinates.

### A. Davies has stated an actionable Eighth Amendment claim against the Supervisory Defendants for their failure to supervise.

If "a supervisory official breache[s] a state-law duty with deliberate indifference toward a resulting constitutional injury, he [has] misused the state authority conferred on him to supervise and control his subordinates."[196] "A supervisor's failure to act, coupled with his deliberate indifference, [i]s tantamount to a conscious decision to allow[] the alleged constitutional injury to occur or persist."[197] As the Fifth Circuit explained in *Doe v. Rains County Independent School District*:

> This conclusion obtains because the state official was responsible for preventing the constitutional injury; his failure to do so rendered him directly liable for the deprivation that his subordinate perpetrated. Such a supervisory official is liable under § 1983 not because he committed a distinct constitutional violation by breaching his duty to supervise, but because his failure to control his subordinate rendered him responsible for the resulting subordinate misconduct—essentially, he was a legal participant.[198]

To state an actionable claim for failure to supervise under § 1983 in this context, a plaintiff must allege: (1) "the [supervisor] failed to supervise or train the [subordinate]," (2) "a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights," and (3) "such failure to supervise or train amounted to gross

---

[194] *Id.* ¶ 63.
[195] R. Doc. 65-1, at 9 (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).
[196] *Doe v. Rains Cty. Indep. Sch. Dist.,* 66 F.3d 1402, 1413 (5th Cir. 1995).
[197] *Id.*
[198] *Id.*

negligence or deliberate indifference."[199] A claim arising under § 1983 "requires a degree of causation as an element of individual liability," but "it does not specifically require 'personal participation.'"[200]

In his Fourth Amended Complaint, Davies alleges facts that, if true, satisfy the three elements of a § 1983 claim against a supervisor. First, Davies alleges the Supervisory Defendants were supervisors and they failed to supervise the other Defendants who were their subordinates.[201] Falgout was Deputy Warden of Operations at LSP, Lamartiniere was Assistant Wardens for Health Services at LSP, and Lavespere was LSP's Medical Director.[202] Further, Davies alleges that, under applicable law, they were obligated in these positions to provide training and supervision to healthcare providers at LSP to ensure inmates received sufficient medical care.[203] Davies also alleges the Supervisory Defendants did not meet these obligations because they failed to ensure their subordinates adequately examined patients, made timely referrals to specialists, prescribed appropriate courses of treatment, provided reasonable monitoring, and provided emergency treatment.[204] The Court finds Davies has sufficiently alleged the Supervisory Defendants failed to adequately supervise their subordinate health care providers at LSP.

Second, Davies alleges a clear causal connection between the failure of the Supervisory Defendants to supervise their subordinates and the violation of his Eighth

---

[199] *Id.* at 1412–13 (quoting *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)); *see Billops v. Sandoval*, 401 F. Supp. 2d 766, 772–74 (N.D. Tex. 2005) (applying *Rains* in the context of a prison doctor's failure to train and supervise subordinate nurses); *see also Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982); *Douthit v. Jones*, 641 F.2d 345, 346–47 (5th Cir. 1981); *Barksdale v. King*, 699 F.2d 744, 746–48 (5th Cir. 1983).

[200] *Rains*, 66 F.3d at 1412.

[201] R. Doc. 52, ¶ 61.

[202] *Id.* ¶¶ 13–15.

[203] *Id.* ¶ 61.

[204] *Id.* ¶ 62

Amendment rights. Davies alleges the failure of the Supervisory Defendants to supervise Nurse Park's treatment of his medical condition led to a significant delay in Davies receiving appropriate care.[205] Likewise, Davies alleges the failure of the Supervisory Defendants to supervise the staff member in charge of "sick call" led the staff member to turn Davies away for medical services because the staff member could not find a certain form.[206] Accordingly, the Court finds Davies has alleged a causal connection between the violations of his constitutional rights to medical care and the failure of the Supervisory Defendants to supervise their subordinates.

Third, Davies alleges Falgout, Lamartiniere, and Lavespere acted with deliberate indifference when they failed to supervise their subordinates. As already explained, the Fourth Amended Complaint alleges the Supervisory Defendants subjectively knew of Davies' injuries, through their interactions with Davies and his complaints and appeals but nevertheless "turned a blind eye" and failed to adequately supervise the LSP staff providing Davies with medical care. As a result, the Court finds Davies' allegations meet the pleading requirements the Fifth Circuit articulated in *Rains* for a deliberate indifference claim against a supervisor under § 1983.

### B.   Davies' alleges facts that, if true, overcome the Supervisory Defendants' defense of qualified immunity on Count 2.

The Court already has found Davies has alleged the Supervisory Defendants violated his Eighth Amendment right to adequate medical care by failing to supervise their subordinates. Accordingly, the Court will now address whether that right was clearly established at the time and, if so, whether the Supervisory Defendants' conduct was

---

[205] *Id.* ¶¶ 50–52.
[206] *Id.* ¶ 33.

objectively unreasonable in light of that right. To start, there is no dispute it is clearly established that the Eighth Amendment guarantees a prisoner's right to adequate medical care and prohibits supervisory officials from "breach[ing] a state-law duty [to supervise subordinates] with deliberate indifference toward a resulting constitutional injury."[207] The only issue, then, is whether the Supervisory Defendants' actions were objectively unreasonable in light of this clearly established law.

Any reasonable supervisory prison official would know a failure to adequately supervise his or her subordinates, as required by state law, would violate prisoners' constitutional rights. Based on the above analysis, the Court finds it was objectively unreasonable for the Supervisory Defendants to receive repeated complaints from Davies regarding prison staff's inadequate treatment of his severe and worsening medical condition and then fail to intervene and ensure their subordinates provided him adequate treatment.

The Court has found Davies' allegations, if true, overcome the Supervisory Defendants' defense of qualified immunity. The Court further finds the Supervisory Defendants' "'immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue."[208]  As a result, limited discovery is needed for the Court to rule. Because the Court needs further clarification of various factual questions before ruling on the Supervisory Defendants' claim of qualified immunity, the Court will order limited discovery in this matter as set forth below.[209]

---

[207] *Doe v. Rains Cty. Indep. Sch. Dist.,* 66 F.3d 1402, 1413 (5th Cir. 1995).

[208] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe,* 691 F.3d at 648).

[209] *Id.* at 674 (5th Cir. 2015) (approving a district court's order for "limited to the personal knowledge and personal conduct of each Defendant as it relates to Albert Hinojosa and the circumstances leading to his death").

## IV.    Count 4 Is Dismissed for Failure to State a Claim on Which Relief May Be Granted.

Under the Due Process Clause of the Fourteenth Amendment, "a competent person has a liberty interest in refusing unwanted medical treatment."[210] Davies alleges the State Defendants acting in their individual capacities violated his Fourteenth Amendment right to refuse medical treatment.[211]

The State Defendants assert this claim should be dismissed because Davies' allegations are conclusory and speculative and because Davies makes no specific factual allegations regarding any of the State Defendants with respect to Count 4.[212] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[213] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[214] However, the court does not accept as true legal conclusions or mere conclusory statements,[215] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[216] "[T]hreadbare recitals of elements of a cause of

---

[210] *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012) (citing *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990); *Washington v. Harper,* 494 U.S. 210, 221–22 (1990); *Thompson v. Upshur Cnty., Tex.,* 245 F.3d 447, 462 n.10 (5th Cir. 2001)).

[211] As stated earlier, "[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Alton v. Texas A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999) (*citing Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 534 (5th Cir.1997)).

[212] The State Defendants also argue this claim should be dismissed because the facts are similar to the facts of *Sama v. Hannigan*, 669 F.3d 585 (5th Cir. 2012). Because the Court has determined the allegations relating to Count 4 fail to state a claim upon which relief may be granted, the Court need not address this argument.

[213] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[214] *Id.*

[215] *Id.*

[216] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[217]

Davies alleges in Count 4 that the State Defendants *and John Does 1-5* (1) contacted UMC to schedule him for surgery; (2) consulted with him prior to his transfer to UMC; (3) purported to discuss the planned surgery with him; (4) arranged for his transfer to UMC for surgery; (5) arranged for his return transfer from UMC and post-operative care; and (6) failed to inform him of a possible penectomy or give him a diagnosis that might have warranted such a procedure, even though they had personal knowledge he would undergo a penectomy.[218] Davies further alleges *these defendants* did not provide him the information "a reasonable patient would need to make an informed decision regarding treatment"[219] and that had he "been afforded his right to refuse treatment, he would have refused the penectomy procedure."[220] Davies' only factual allegations to support Count 4 are that, on September 2, 2016, "LSP personnel" told Davies he was being transferred to University Medical Center for a biopsy,[221] and that on either September 2 or September 3, 2016, Defendant Jonathan Silberstein, a doctor at UMC, performed a penectomy on him to which he did not provide informed consent.[222]

Davies has not alleged sufficient factual allegations to support a claim against the State Defendants regarding his right to refuse medical treatment. Even if true, the facts alleged do not allow the Court to draw the reasonable inference that the State Defendants are liable for the misconduct.

---

[217] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[218] R. Doc. 52, ¶ 73.
[219] *Id.* ¶ 75.
[220] *Id.* ¶ 76.
[221] *Id.* ¶ 44.
[222] *Id.* ¶ 72

Accordingly, Count 4 against the State Defendants is dismissed with prejudice.

## CONCLUSION

**IT IS ORDERED**, for the foregoing reasons, that the motion to dismiss Counts 1, 2, and 3 filed by Defendants Falgout, Lamartiniere, Lavespere, and Park for failure to state a claim is **DENIED** and the Court's ruling on qualified immunity on these Counts is **DEFERRED**.

**IT IS FURTHER ORDERED** that the parties may engage in **LIMITED DISCOVERY** with regard to Counts 1, 2, and 3, as set forth below:

(1)   Davies' medical condition prior to his surgery and when he exhibited certain symptoms;

(2)   the examination and treatment Nurse Park and others provided Davies;

(3)   the complaints and appeals filed by Davies and to whom they were addressed;

(4)   the knowledge or awareness Falgout, Lamartiniere, and Lavespere had regarding Davies' medical needs, either through his filing of grievances and appeals or through their personal interactions with him;

(5)   the responses of Falgout, Lamartiniere, and Lavespere to Davies' medical needs;

(6)   any policies or procedures established, implemented, or maintained at LSP by Falgout, Lamartiniere, or Lavespere to ensure inmates received adequate medical care;

(7)   the actions Falgout, Lamartiniere, and Lavespere took to ensure that applicable policies and procedures were followed;

(8)   the subordinates over whom Falgout, Lamartiniere, and Lavespere exercised supervisory authority; and

(9)   the actions Falgout, Lamartiniere, and Lavespere took to supervise their subordinates.

To the extent possible, discovery shall be conducted via interrogatories and other written methods. If depositions are necessary, they must be noticed and conducted on the least

36

intrusive basis possible. The limited discovery is to be complete on or before **September 30, 2020**.

Because the Court has deferred ruling on qualified immunity as to claims 1, 2, and 3, supplemental memoranda will be allowed and evidence outside the pleadings may be attached for the Court's consideration in determining qualified immunity. The State Defendants' supplemental memorandum in support of dismissal based on qualified immunity must be filed on or before **October 19, 2020**. The Plaintiff's supplemental memorandum in opposition to dismissal based on qualified immunity must be filed on or before **November 2, 2020**. The parties may support their position by reference to answers to written discovery and depositions, with record citations.

**IT IS FURTHER ORDERED** that the parties shall meet or confer on or before **July 17, 2020** to discuss the nature and timing of the limited discovery to be conducted under the terms of this Order.

**IT IS FURTHER ORDERED** that Count 4 against Defendants Falgout, Lamartiniere, Lavespere, and Park is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Court shall hold a telephone status conference with all parties on **July 22, 2020 at 10:15 a.m.** The Court will provide call-in instructions for this status conference.

**New Orleans, Louisiana, this 8th day of July, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**